STEPHEN M. HAYES (SBN 83583)
TYLER R. AUSTIN (SBN 293977)
HAYES SCOTT BONINO ELLINGSON
GUSLANI SIMONSON & CLAUSE, LLP
999 Skyway Road, Suite 310
San Carlos, California 94070
Telephone:    (650) 637-9100
Facsimile:    (650) 637-8071
shayes@hayesscott.com
taustin@hayesscott.com

Attorneys for Defendant
CITIZENS INSURANCE COMPANY OF AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. FOUNTAIN, INC., a California Corporation d/b/a ROBERT FOUNTAIN INTERNATIONAL; and ROBERT W. FOUNTAIN, an Individual and Sole Owner,<br><br>Plaintiffs,<br><br>v.<br><br>CITIZENS INSURANCE COMPANY OF AMERICA, a Michigan Corporation; and DOES 1 through 20, Inclusive<br><br>Defendants. | CASE NO.: 3:20-CV-05441-CRB<br><br>**DEFENDANT CITIZENS INSURANCE COMPANY OF AMERICA'S NOTICE OF MOTION AND MOTION IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES [F.R.C.P. Rule 12(c)]**<br><br>Date:          December 18 2020<br>Time:         10:00 a.m.<br>Dept.:         6<br>Judge:        Hon. Charles R. Breyer<br><br>Date Action Filed:     June 25, 2020<br>Trial Date:               Not Yet Set |

1197018

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on December 18, 2020 at 10:00 a.m., or as soon thereafter as may be heard before or by the Honorable Charles R. Breyer, United States District Judge, in the San Francisco Courthouse, Courtroom 6, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Citizens Insurance Company of America ("Citizens") will, and hereby does, move the Court for an order on judgment on the pleadings to the Complaint filed by plaintiffs Robert W. Fountain, Inc., dba Robert Fountain International and Robert W. Fountain.

This motion will be made pursuant to Federal Rules of Civil Procedure 12(c) on the grounds that plaintiffs' claims for breach of contract and declaratory relief fail as a matter of law because plaintiffs' property did not suffer a direct physical loss and the virus and loss of use exclusions preclude coverage for COVID-19 related claims and losses.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities, declaration of Tyler R. Austin, request for judicial notice and exhibits thereto, and [proposed] order, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated:  November 12, 2020

HAYES SCOTT BONINO ELLINGSON
GUSLANI SIMONSON & CLAUSE, LLP


By:  */S/ Tyler R. Austin*_____
STEPHEN M. HAYES
TYLER R. AUSTIN
Attorneys for Defendant
CITIZENS INSURANCE COMPANY OF AMERICA

# TABLE OF CONTENTS

I.     STATEMENT OF ISSUES TO BE DECIDED ............................................. 1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 1

III.   FACTUAL BACKGROUND ........................................................................ 3

    A.     The Citizens Policy Language ......................................................... 4

        1.     Business Income Provision ................................................. 4

        2.     Virus Exclusion Provision .................................................. 5

        3.     Consequential Losses and Loss of Use Exclusion Provision .................... 6

    B.     Plaintiff Seeks Coverage Based on Government Shutdown Order
       Causing a "Loss of Use" ................................................................. 6

IV.    LEGAL STANDARD ................................................................................... 6

    A.     12(c) Motion for Judgment on the Pleadings ................................. 6

    B.     Insurance Policy Interpretation. ..................................................... 8

V.     PLAINTIFFS DID NOT SUFFER DIRECT PHYSICAL LOSS AND THE
    VIRUS AND LOSS OF USE EXCLUSIONS PRECLUDE COVERAGE ...... 8

    A.     Plaintiffs Cannot Satisfy the Policy Requirement of "Direct Physical
       Loss of or Damage to Property" As Required by the Business Income
       Insuring Agreement. ........................................................................ 8

    B.     The Virus Exclusion Precludes Coverage Under the Policy. ............... 12

    C.     The Consequential Losses and Loss of Use Exclusion Precludes
       Coverage. ......................................................................................... 14

VI.    CONCLUSION ............................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*10E, LLC v. Travelers Indem. Co. of Connecticut,*
   2:20-CV-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020)............................ 10

5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................... 7

6

7

*Bank of the W. v. Superior Ct.,*
   2 Cal. 4th 1254 (1992).................................................................................................... 8

8

9

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................................................... 7

10

*Boxed Foods Co., LLC v. California Capital Ins. Co.,*
   No. 20-CV-04571-CRB, 2020 WL 6271021 (N.D. Cal. Oct. 26, 2020)...................... 3, 7, 13

11

12

*Chavez v. United States,*
   683 F.3d 1102 (9th Cir.2012)......................................................................................... 7

13

14

*Diesel Barbershop, LLC, et al. v. State Farm Lloyds,*
   Case No. 5:20–CV–461–DAE (W.D. Tex., August 13, 2020) ............................... 11

15

*Fleming v. Pickard,*
   581 F.3d 922 (9th Cir.2009)........................................................................................... 7

16

17

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.,*
   No. 20-CV-04434 JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) ............................ 2, 13

18

19

*Harvest Moon Distributors, LLC v. S.-Owners Ins. Co.,*
   No. 620CV1026ORL40DCI, 2020 WL 6018918 (M.D. Fla. Oct. 9, 2020) ................... 13, 14

20

21

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.,*
   1:20-CV-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020)........................................ 10

22

*Hoeft v. Tucson Unified Sch. Dist.,*
   967 F.2d 1298 (9th Cir.1992)......................................................................................... 7

23

24

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London,*
   No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020)..................... 11

25

*Lowden v. T–Mobile USA, Inc.,*
   378 Fed.Appx. 693, 2010 WL 1841891 (9th Cir., May 10, 2010)........................................ 7

26

27

*Malaube, LLC v. Greenwich Ins. Co.,*
   No. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020)........................................ 11

28

-ii-

*Mark's Engine Co. v. Travelers Indem.*,
    No. 2:20-CV-04423-AB-SK, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) ........................... 10

*Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*,
    No. CV 06-4766 CAS, 2008 WL 3009889 (C.D. Cal. Mar. 20, 2008) .................................... 9

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
    187 Cal. App. 4th 766 (2010) ....................................................................................... 2, 9, 11

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
    20-CV-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) ............................. 9, 10, 11

*O'Brien Sales and Marketing, Inc. v. Transportation Ins. Co.*,
    No. 20-2951 (N.D. Cal, April 29, 2020) ................................................................................ 10

*Perez v. Wells Fargo & Co.*,
    75 F.Supp.3d 1184 (N.D. Cal. 2014) ...................................................................................... 6

*Plan Check Downtown III, LLC v. AmGuard Insurance Company, et al.*,
    2020 WL 5742712 (C.D. Cal., September 16, 2020, No. CV 20-6954-GW-SKx) ................ 11

*Rose's 1, LLC v. Erie Insurance Exchange*,
    Case No. 2020 CA 002424B (D.C. Superior Court) .............................................................. 11

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
    No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020 transcript, 5:3-4) .................................... 12

*Social Life Magazine, Inc. v. Sentinel Insurance Co. Ltd.*,
    No. 1:2020cv03311-VEC (S.D.N.Y. 2020) ........................................................................... 11

*State Farm Fire & Cas. Co. v. Martin*,
    872 F.2d 319 (9th Cir. 1989) ................................................................................................... 8

*The Inns by the Sea v. California Mutual Insurance Company*,
    Case No. 20CV001274 (Monterey County Superior Court, August 6, 2020 –
    Judge Lydia M. Villarreal) Order ......................................................................................... 11

*Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos*,
    CV 20-3619 PSG (EX), 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) .................................. 10

*Vandelay Hospitality V. The Cincinnati Ins. Co.*,
    No. 3:20-CV-1348-D, 2020 WL 5946863 (N.D. Tex. Oct. 7, 2020) ..................................... 10

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*,
    No. 220CV05663VAPDFMX, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) ................ 10, 14

*Waller v. Truck Ins. Exch., Inc.*,
    11 Cal.4th 1 (Cal. 1995) .......................................................................................................... 8

1

2

*Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*,
   114 Cal.App.4th 548 (2003) ............................................................................. 11, 12

*Weil v. Federal Kemper Life Assurance Co*.,
   7 Cal. 4th 125 (1994) ............................................................................................. 8

**Other Authorities**

Federal Rules of Civil Procedure, rule 12(b)(6) and 12(c) ....................................... 3, 6, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iv-

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Citizens Insurance Company of America ("Citizens" or "Defendant") hereby submits this Motion for Judgment on the Pleadings to plaintiffs Robert W. Fountain, Inc., dba Robert Fountain International and Robert W. Fountain's Complaint ("Fountain" or "Plaintiffs"). (Dkt. No. 3.) [1]

**I.**
**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Fountain states a valid claim for lost income or incurred extra expense due to "direct physical loss of or damage to property" even though they do not allege that their claimed loss was caused by actual physical loss of or damage to the insured property.

2.      Whether a provision in the insurance policy, which excludes "loss or damage caused directly or indirectly by . . . Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," bars coverage for the losses in connection with COVID-19, i.e., a virus.

3.      Whether a provision in the insurance policy, which excludes Consequential Losses such as "loss or damage caused by or resulting from: … loss of use," bars coverage for any of Fountain's consequential loss claims.

**II.**
**INTRODUCTION AND SUMMARY OF ARGUMENT**

This action arises from Fountain's claim that their event planning business is entitled to insurance coverage for alleged business income losses flowing from the virus-related San Francisco and California statewide "shelter in place" and "stay home" orders issued in March 2020.  Plaintiffs assert that as a result of the government orders, their business suffered a "loss of use" of the property and coverage should be available under the business interruption provision in the insurance policy.  Coverage does not exist for plaintiffs' claims and defendant seeks an order dismissing the lawsuit because (1) plaintiffs' property did not suffer a direct physical loss, (2) the

---

[1]  Plaintiff's full Complaint with the Citizens' policies attached was filed with the Court on August 6, 2020 (Dkt. 3) following the removal to this Court (Dkt. 1).  For the Court's ease of reference, plaintiffs' Complaint with attached insurance policies is attached as Exhibit 1 to the declaration of Tyler Austin, filed concurrently herein, and bates stamped "Complaint w/ policies 0001-0344".

virus exclusion precludes coverage for COVID-19 related claims, and (3) the consequential loss exclusion includes "loss of use" and further preludes coverage such losses.

Citizens acknowledges that the COVID-19 pandemic has impacted the economy in California and worldwide.  However, recent state and federal trial court decisions, including a recent decision by this Court, have shown that insured parties cannot disregard the insurance policy's terms to create coverage where none exists.  Similar virus exclusions to the one in plaintiffs' policy have been upheld by courts as applied to the COVID-19 virus and business closures resulting from government shutdown orders do not satisfy the "direct physical loss" provision in insurance policies.  Based on these recent decisions, there is no coverage under plaintiffs' insurance policy and this motion for judgment on the pleadings should be granted.

Fountain's Complaint alleges that its losses were caused by the shutdown orders:

> "10.    Because of these government orders, Plaintiffs were physically unable to utilize their business premises and thus lost the physical use thereof."  [Exh. 1, Complaint ¶ 10.]

In an effort to place the cause of loss on the government orders and not the COVID-19 virus, Fountain alleges that the virus did not cause their losses.  (Exh. 1, Complaint, ¶ 9.)  A recent Northern District court referred to this style of artful pleading as "nonsense" in the context of insureds seeking to plead around the virus exclusion for those losses stemming from the COVID-19 virus.  (*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020).)

The Citizens Policy issued to plaintiffs only provides coverage for business income losses caused by "direct physical loss", which requires a tangible alteration of property under California law.  Plaintiff's allegation that the loss arises from plaintiffs' inability to "utilize" business and "lost the physical use thereof" is insufficient to establish coverage.  Under California law, losses from inability to use property do not amount to "direct physical loss" within the ordinary and popular meaning of that phrase.  Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration."  (*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (citation and quot. omitted).  The loss of use is not a direct physical loss under California law.

1    Plaintiffs do not and cannot allege that their business suffered any alteration to the property

2    as a result of the government orders or the COVID-19 virus.

3    The Policy also contains a Virus Exclusion that states in plain terms that:  "We will not pay

4    for loss or damage caused directly or indirectly by any (1) Any virus, bacterium or other

5    microorganism that induces or is capable of inducing physical distress, illness or disease.  (Exh. 1,

6    pp. 69-71.)  This Court recently held that the virus exclusion applies to business income losses

7    when the exclusion does not contain any limitations and is couched in language that broadly applies

8    to any loss or damage caused directly or indirectly by a virus.  (*Boxed Foods Co., LLC v. California*

9    *Capital Ins. Co*., No. 20-CV-04571-CRB, 2020 WL 6271021, at *4 (N.D. Cal. Oct. 26, 2020), as

10   amended (Oct. 27, 2020).)  The Citizens Virus Exclusion applies here and bars Fountain's claim.

11   Finally, the Citizen Policy also contains a Consequential Losses exclusion which includes

12   losses from the "loss of use" further precluding coverage for any consequential damages plaintiffs

13   may claim.  (Exh. 1, p. 71.)

14   Based on a plain reading of the Policy terms, coverage does not exist here, and plaintiffs

15   cannot amend to plead an entitlement to coverage under the Policy.  The Court should grant this

16   Rule 12(c) motion for judgment on the pleadings without leave to amend as the failure to state a

17   valid claim for coverage cannot be cured.

### III.
### FACTUAL BACKGROUND

18

19   Plaintiffs allege they do business as "Robert Fountain International", an event designer and

20   producer located in San Francisco, California.  (Complaint, ¶ 1.)  Plaintiff alleges business income

21   losses under two successive and identical Citizens insurance policies, Businessowners insurance

22   policy number OBF-9926622-07/08, with effective dates 05/01/2019 to 05/01/2020 and 05/01/2020

23   05/01/2021 ("Policy").  The Policy was issued by Citizens to named insured Robert Daniel

24   Freeman.  (Complaint, ¶ 6, Exh. 1 to Austin Decl., p. 20.)[2]

25   Plaintiffs seek insurance coverage for their alleged business income losses caused by the

26   Coronavirus, a virus which has resulted in government orders that were implemented to protect the

27

28   [2]  For the Court's ease of reference, defendant has bates stamped the Policies and are attached to the Austin Decl. as Exh. 1, pp. 0009-344, and all references are to the bates number on the first policy.

public from the Coronavirus Disease 2019 (COVID-19).  (Complaint, Exh. 1, ¶ 6.)  Plaintiffs seek coverage for business income losses that resulted from the San Francisco and California state government shutdown orders and has alleged claims for breach of contract and declaratory relief.

**A.      The Citizens Policy Language**

There are three Policy provisions applicable to plaintiffs' claimed losses: (1) Business Income and Extra Expense coverage, (2) the Virus Exclusion, and (3) the "Loss of Use" exclusion. The Policy includes business income losses or increased expenses losses under the Additional Coverage section, which provides in relevant part:

> **Section I- Property**
>
> **A.      Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.  [Exh. 1,  p. 33]

A "Covered Cause of Loss" is defined as a "Risks of direct physical loss" unless the loss is excluded by the Policy's exclusions.  (Exh. 1,  p. 35.)

**1.      Business Income Provision**

The Business Income losses must arise from a direct physical loss or damage to the insured's property:

> **5.      Additional Coverages**
>
> **f.      Business Income**
>
> When Business Income Coverage is provided under this policy:
>
> **(1)      Business Income**
>
> (a) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to a described premises shown in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.  [Exh. 1,  p. 39.]

1197018

-4-

1    The Period of Restoration is defined as follows:

2        **41.** "Period of Restoration"

3        **a.** Means the period of time that:

4        **(1)** Begins:

5        **(a)** After the number of hours shown as the Business Income
6        Waiting Period in the Declarations after the time of direct
         physical loss or damage for Business Income Coverage;
7
         or
8
         **(b)** Immediately after the time of direct physical loss or
9        damage for Extra Expense Coverage;

10       caused by or resulting from any Covered Cause of Loss at the
         described premises; and
11
12       **(2)** Ends on the earlier of:

13       **(a)** The date when the property at the described premises
         should be repaired, rebuilt or replaced (to a condition
14       permitting occupancy) with reasonable speed and similar
         quality…[Exh. 1,  p. 86.]
15
16    The Policy covers extra expenses incurred during a period of restoration that the insured

17 "would not have incurred if there had been no direct physical loss of or damage to property."  [Exh.

18 1,  p. 41.]

19        **2.**    **Virus Exclusion Provision**

20    The Policy contains a virus exclusion that states in plain terms that:

21       **B.**    **Exclusions**

22       1. We will not pay for loss or damage caused directly or
         indirectly by any of the following. Such loss or damage is
23       excluded regardless of any other cause or event that
         contributes concurrently or in any sequence to the loss.
24
25       **i.**    **Virus or Bacteria**

26       (1) Any virus, bacterium or other
         microorganism that induces or is
27       capable of inducing physical distress,
         illness or disease.  [Exh. 1,  pp. 69, 71.]
28

1197018                                    -5-

The virus exclusion excludes any losses from the COVID-19 virus by its express terms.

**3.**    **Consequential Losses and Loss of Use Exclusion Provision**

The Consequential Losses Exclusion excludes "loss of use" claims and is located in section (B)(2)(a) of the Exclusions in the Policy, and provides that:

> We will not pay for loss or damage caused by or resulting from any of the following:
>
>    **a. Consequential Losses.**
>
>      Delay, **loss of use** or loss of market, however caused.  [Exh. 1, 71.]

The "loss of use" exclusion applies to plaintiffs' claims for the alleged losses arising from the COVID-19 virus.

**B.**    **Plaintiff Seeks Coverage Based on Government Shutdown Order Causing a "Loss of Use"**

In an effort to avoid the "direct physical loss" requirement and the virus exclusion, plaintiffs frame all of the losses as arising from the government shutdown orders and not from the virus directly.  Plaintiff engages in artful pleading in the effort to avoid the Policy requirements:

> "10.  Because of these government orders, Plaintiffs were physically unable to utilize their business premises and thus lost the physical use thereof."  [Complaint, Exh. 1, ¶ 10.]

As the government shutdown orders arising from the COVID-19 pandemic may have resulted in losses as alleged by plaintiffs, the orders did not cause a direct physical loss to plaintiffs' business and the virus and loss of use exclusions preclude coverage under the Citizens' Policy.[3]

**IV.
LEGAL STANDARD**

**A.**    **12(c) Motion for Judgment on the Pleadings**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  (Fed. R. Civ. P. 12(c).)  A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings."  (*Perez v. Wells Fargo & Co.*,

---

[3]  San Francisco's March 31, 2020 shelter in place order is attached as Exhibit A to the Request for Judicial Notice and the California statewide stay at home order is attached as Exhibit B.

75 F.Supp.3d 1184, 1187 (N.D. Cal. 2014).)  The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical,"  (*Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir.2011), as both permit challenges directed at the legal sufficiency of the parties' allegations.  Thus, a judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law.  (*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 (9th Cir.1992); see also *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir.2009).)

The standard articulated in *Twombly* and *Iqbal* applies equally to a motion for judgment on the pleadings.  (*Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir.2012); *Cafasso*, 637 F.3d at 1054–55 & n. 4; see also *Lowden v. T–Mobile USA, Inc*., 378 Fed.Appx. 693, 694, 2010 WL 1841891 at *1 (9th Cir., May 10, 2010) ("To survive a Federal Rule of Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face' " (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  (*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Indeed, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  (*Twombly*, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  (*Id.*)

The court should grant judgment on the pleadings <u>without</u> leave to amend because plaintiffs' property did not suffer a direct physical loss and the virus exclusion and loss of use exclusion preclude coverage for COVID-19 related claims.  As this Court recently stated in *Boxed Foods Co.,* a court has discretion to deny leave to amend due to, among other things, "futility of amendment."  (Exh. C:  *Boxed Foods Co., LLC v. California Capital Ins. Co*., supra, 2020 WL 6271021, at *7, citing *Leadsinger, Inc. v. BMG Music Pub*., 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, any amendment would be futile, and the Court should grant Citizens' motion with prejudice.

1197018

-7-

**B.    Insurance Policy Interpretation.**

"[I]nterpretation of an insurance policy is a question of law." (*Waller v. Truck Ins. Exch., Inc*., 11 Cal.4th 1, 18 (Cal. 1995) (citation omitted).) "The insurer bears the burden of proving . . . the applicability of an exclusion . . . ." (*State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 321 (9th Cir. 1989).) The court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." (*Waller*, 11 Cal. 4th at 18 (citation omitted). The plain language of the insurance policy governs its interpretation. (See *Bank of the W. v. Superior Ct*., 2 Cal. 4th 1254, 1264–65 (1992).) A policy provision is ambiguous if it is "capable of two or more constructions, both of which are reasonable." (*Waller*, 11 Cal. 4th at 18.) If the language is ambiguous or unclear, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promise understood it." (*Bank of the W*., 2 Cal. 4th at 1264–65.) Courts should "not strain to create an ambiguity where none exists." (*Waller*, 11 Cal. 4th at 18–19.)

# V.
## PLAINTIFFS DID NOT SUFFER DIRECT PHYSICAL LOSS AND THE VIRUS AND LOSS OF USE EXCLUSIONS PRECLUDE COVERAGE

**A.    Plaintiffs Cannot Satisfy the Policy Requirement of "Direct Physical Loss of or Damage to Property" As Required by the Business Income Insuring Agreement.**

In a case against an insurer based on the denial of coverage, the insured has the burden to prove that a loss is covered under the terms of the insurance policy. (*Weil v. Federal Kemper Life Assurance Co*., 7 Cal. 4th 125, 148 (1994).) Fountain's claims for breach of contract and declaratory relief fail to state valid claims for coverage under the policy's Business Income and Extra Expense provisions. These coverages apply only when there is "direct physical loss of or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a Covered Cause of Loss"; and only if that loss or damage "cause[s]" a necessary "suspension" (i.e., slowdown or cessation) of the insured's operations during the "Period of Restoration". (Exh. 1, Policy, p. 39.) Fountain does not allege physical loss or damage to property; instead, Fountain alleges it suffered the loss of "physical use" of the property. (Complaint, ¶ 10.)

Under California law, losses from inability to access or use property do not amount to

"direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase.  Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration."  (*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co*., 187 Cal.App.4th 766, 779 (2010) (citation and quotation marks omitted).  "Detrimental economic impact" does not suffice. (*Id*. (citation and quotation marks omitted).)

"For there to be a 'loss' within the meaning of the policy, some external force must have acted upon the insured property to cause a physical change in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term."  (*MRI Healthcare Ctr. of Glendale, Inc,* at 780 (emphasis in original); see also *Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am*., No. CV 06-4766 CAS, 2008 WL 3009889, at *6 (C.D. Cal. Mar. 20, 2008) (insured required to show "some tangible change" or "some detectable physical change" to its yarn in order to recover on claim that fire in warehouse resulted in covered loss or damage to the yarn insured by the policy); Exh. J: *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am*., 20-CV-03213-JST, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020) [dismissing claim for failure to allege COVID-19 or any other physical impetus caused physical loss].)

The recent *Mudpie* case is persuasive here because the plaintiff there alleged that its loss of use or dispossession of the property satisfied the policy requirement of direct physical loss.  Judge Jon S. Tigar disagreed and found that once the "Stay at Home orders are lifted, Mudpie can regain possession of its storefront.  Mudpie's physical storefront has not been 'misplaced' or become 'unrecoverable,' and neither has its inventory."  (2020 WL 5525171 at *4.)  Judge Tigar further stated that there was "nothing to fix, replace, or even disinfect for Mudpie to regain occupancy of its property" because its loss was "caused by state closure orders and thus will last for however long those restrictions remain."  (*Id*.)  Similarly here, there has been no covered "loss of" property because Fountain does not allege that its property has been "misplaced" or "unrecoverable" and none of Fountain's property needs to be fixed or replaced.  (See Exh. D:  *Water Sports Kauai, Inc. v. Fireman's Fund Ins*. Co., 20-cv-03750-WHO, slip opinion, p. 9 (N.D. Cal. November 9, 2020).

Fountain has not alleged any direct physical loss or that any damage occurred at their events planning property.  Moreover, Fountain has not been dispossessed or deprived of any specific

property.  Instead, Fountain complains only of a loss of use, meaning its inability to operate its events planning business.  The Policy does not cover that purely economic loss.  The primary cause of loss here is the COVID-19 virus which precipitated the government shutdown orders.

In addition to *Mudpie* and *Water Sports Kauai*, numerous recent court decisions have found that similar allegations <u>do not</u> trigger coverage under similarly worded policies as a result of government closure orders.  The cases consistently conclude an insured's inability to "use" its property cannot be equated with damage to property.  (Exh. E: *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, No. 220CV05663VAPDFMX, 2020 WL 6440037, at *4 (C.D. Cal. Oct. 27, 2020) ["Plaintiffs cannot state a legally cognizable claim based on the temporary <u>loss of use</u> of property alleged here." (emphasis added)]; Exh. F: *Mark's Engine Co. v. Travelers Indem.*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal. Oct. 2, 2020) ["Under California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase."]; Exh. G: T*ravelers Cas. Ins. Co. of Am. v. Geragos and Geragos*, CV 20-3619 PSG (EX), 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020) [dismissing claim under "loss of or damage to" language where insured "fails to allege that there was physical damage to the property and concedes that Coronavirus 'has never been detected at [its] property.'"]; Exh. H: *10E, LLC v. Travelers Indem. Co. of Connecticut*, 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020) ["Under California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.' [] 'Detrimental economic impact' does not suffice." (internal citations omitted)]. [4]

---

[4]  The recent COVID-19 related cases referenced herein are attached to the Request for Judicial Notice.  See also Exh. K: *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am*., 1:20-CV-2939-TWT, 2020 WL 5938755, at *6 (N.D. Ga. Oct. 6, 2020) (dismissing claims because the "range of contemplated harms aligns with an understanding that 'loss of' means total destruction while 'damage to' means some amount of harm or injury."); Exh: L: *Vandelay Hospitality V. The Cincinnati Ins. Co*., No. 3:20-CV-1348-D, 2020 WL 5946863, at *1 (N.D. Tex. Oct. 7, 2020) [failure to plead a direct physical loss or damage to recover for breach of contract]; Exh. M: *It's Nice Inc v State Farm Fire and Casualty Co*., DuPage County, IL 2020L 000547, 09/29/20 [no direct physical loss]; Exh. N: *O'Brien Sales and Marketing, Inc. v. Transportation Ins. Co*., No. 20-

1    Finally, as in *Mudpie*, viewing the language of the Policy as a whole, the "Period of

2  Restoration" language (during which the Policy covers lost business income and extra expenses)

3  supports the conclusion that damage to property is required for business interruption coverage.  As

4  noted in *Mudpie*, the period of restoration begins on the "date of direct physical loss or damage

5  caused by or resulting from any Covered Cause of Loss at the described premises" and ends when

6  "the property at the described premises should be repaired, rebuilt or replaced with reasonable

7  speed and similar quality."  (Exh. 1, p. 86.)  As in *Mudpie*, Fountain does not make any allegations

8  (because it cannot) that their property needs to be repaired, rebuilt, or replaced as a result of

9  COVID-19.

10    Resting its entire coverage claim on the government shutdown orders, plaintiff does not

11  even allege a "direct physical loss" to the property as required to satisfy the Business Income

12  Coverage insuring agreement.  The allegations in plaintiffs' Complaint are very thin on facts, but

13  even if plaintiff attempted to allege direct physical loss, such attempt would fail.  As demonstrated

14  in *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*, 114 Cal.App.4th 548 (2003),

15  plaintiff cannot plead the requirements for physical loss under these facts because a virus that

16

---

17  2951 (N.D. Cal, April 29, 2020) [motion to dismiss granted]; Exh. O: *Oral Surgeons PC v.
    Cincinnati Ins. Co.*, 4:20-cv-00222-CRW-SBJ p. 2 (SDIA 09/29/20) ["virus-related closures of

18  business do not amount to direct loss to property"]; Exh. P: *Infinity Exhibits, Inc. v. Certain
    Underwriters at Lloyd's London*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *4 (M.D. Fla.

19  Sept. 28, 2020) ["Courts across the country have held that such coverage does not exist where, as

20  here, policyholders fail to plead facts showing physical property damage."]; Exh.: Q: *Plan Check
    Downtown III, LLC v. AmGuard Insurance Company, et al.*, 2020 WL 5742712 (C.D. Cal.,

21  September 16, 2020, No. CV 20-6954-GW-SKx); Exh.: R: *Diesel Barbershop, LLC, et al. v. State
    Farm Lloyds*, Case No. 5:20–CV–461–DAE (W.D. Tex., August 13, 2020) [motion to dismiss

22  granted for insurer because no direct physical loss and the virus exclusion applies]; Exh. S: *Rose's
    1, LLC v. Erie Insurance Exchange*, Case No. 2020 CA 002424B (D.C. Superior Court) (motion for

23  summary judgment granted for insurer because no direct physical loss); Exh. T: *Malaube, LLC v.
    Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020)

24  [business losses must be caused by some physical damage to property]; Exh.: U: *The Inns by the
    Sea v. California Mutual Insurance Company*, Case No. 20CV001274 (Monterey County Superior

25  Court, August 6, 2020 – Judge Lydia M. Villarreal) Order and August 4, 2020 transcript [the court

26  agreed with defendant that there was no "direct physical loss" under *MRI Healthcare, supra.*]; Exh.
    V: *Social Life Magazine, Inc. v. Sentinel Insurance Co. Ltd.*, No. 1:2020cv03311-VEC (S.D.N.Y.

27  2020) [plaintiff's motion for a preliminary injunction denied, leading to a voluntary dismissal,

28  because no direct physical loss].

1  causes COVID-19 does not cause damage or alteration to tangible property.

2      In *Ward*, the court analyzed the similar insuring agreement language found in this policy –

3  "direct physical loss of or damage" to the insured's premises.  (*Id*. at 555.)  The issue was whether

4  there was business income loss coverage for the loss of electronic data.  The court held "we

5  construe the words 'direct physical' to modify both 'loss of' and 'damage to.'"  (*Id*. at 554.)  The

6  court held the word "physical" means "tangible".  (*Id*. at 556.)  The court explained that "although

7  the damage covered, loss of income, is not itself a physical loss, the loss of income must

8  be *caused* by a physical loss resulting from a risk of physical loss described in the same terms as in

9  the BPP form."  (*Id*. at 554-555. (Emphasis in original.))  The court concluded the loss of a

10  computer database was "not a 'direct physical loss of or damage to' covered property under the

11  terms of the subject insurance policy, and, therefore, the loss [was] not covered."  (*Id*. at 556-557.)

12  The COVID-19 virus does not cause a physical loss or damage to property.  As one court in the

13  SDNY framed it, COVID-19 "damages lungs.  It doesn't damage printing presses" or other

14  property.  (See Exh. W: *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd*., No. 20 Civ. 3311

15  (VEC) (S.D.N.Y. May 14, 2020 transcript, 5:3-4).)

16      Plaintiff must assert direct physical damage to its covered property and that such damage

17  caused the alleged losses being claimed.  Plaintiff fails to do either, and they cannot.  Thus, the

18  Complaint fails to state a valid breach of contract claim and the matter must be dismissed.

19  **B.      The Virus Exclusion Precludes Coverage Under the Policy.**

20      The Virus Exclusion unambiguously bars coverage for all of plaintiff's claims against

21  Citizens because Fountain admits that the alleged business losses were caused by the government

22  shutdown orders that arose from the COVID-19 virus. (Complaint, ¶¶ 7-9.)  The Virus Exclusion

23  expressly excludes any business income losses arising from any "virus, bacterium or other

24  microorganism that induces or is capable of inducing physical distress, illness or disease."  (Exh. 1,

25  Policy, pp. 69, 71.)  Plaintiffs concede that the March 2020 government orders were issued to

26  protect residents from the spread of the COVID-19 virus.  (Complaint, ¶¶ 7-9.)  Despite this

27  admission, plaintiffs seek to evade the Virus Exclusion by alleging that its losses arise from the

28  government shutdown orders and not the virus.  (Complaint, ¶ 10.)

By its own language, the Virus Exclusion applies when a virus indirectly causes or contributes to the cause of loss. (Exh. 1, pp. 69, 71.) Under California law, the Virus Exclusion precludes coverage when COVID-19 is the "efficient proximate cause" of plaintiffs' losses. (See *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395 (1989).) An "efficient proximate cause" is a cause of loss that predominates and sets the other cause of loss in motion. (Id. at 402-403.) When loss can be attributed to two causes—a covered and an excluded cause—coverage only exists if the efficient proximate cause of the damage is covered under the policy. (Id. at 403.) The government shutdown orders would not exist in the absence of COVID-19 and Fountain's claim for coverage would not exist absent the government orders; COVID-19 is therefore the efficient proximate of Fountain's losses. That is the same conclusion reached by this Court in *Boxed Foods Co., LLC v. California Capital Ins. Co.*, which held that the COVID-19 virus is the proximate cause of the losses for those business that suffered losses from the COVID-19 government shutdown orders. (*Boxed Foods Co.,* 2020 WL 6271021, at *4.) Thus, the Virus Exclusion precludes plaintiffs' claim for business income losses and extra expenses under the Business Income provision.

Plaintiffs cannot plead around this Exclusion and the court in *Franklin EWC, Inc. v. The Hartford* characterized it as "nonsense" for the insured to argue that the virus exclusion does not apply because the losses flowed from the shutdown order and not the virus. (*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) ["Thus, under Plaintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply. <u>Nonsense</u>." Emphasis added.].) It is likewise preposterous for plaintiff to argue that the Virus Exclusion does not apply when the shutdown orders arose from the COVID-19 virus. As one Florida District Court observed, "The pandemic does not change the terms of the Policy, which the parties bargained for and agreed to." (Exh. Y: *Harvest Moon Distributors, LLC v. S.-Owners Ins. Co.*, No. 620CV1026ORL40DCI, 2020 WL 6018918, at *6 (M.D. Fla. Oct. 9, 2020); see also *Boxed Foods Co., LLC v. California Capital Ins*. Co., *supra*, 2020 WL 6271021, at *1 ["But while the Court sympathizes with Plaintiffs' circumstances, the Court cannot ignore that the insurance policy excludes coverage for losses caused by viruses, like COVID-19."])

Irrespective of Fountain's attempt to plead around the Virus Exclusion, the COVID-19 virus and the resultant shutdown orders were the proximate cause of the business losses. Plaintiff's allegations and existing law make clear that there is no coverage under the Citizens Policy due to the Virus Exclusion. Plaintiffs' Complaint should be dismissed without leave to amend. (*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway*, *supra*, 2020 WL 6440037, at *6 [Because "the Virus Exclusion precludes coverage…the Court determines that granting Plaintiffs leave to amend would be futile"].)

**C.     The Consequential Losses and Loss of Use Exclusion Precludes Coverage.**

The Policy also contains a Consequential Losses Exclusion that excludes "loss of use" located in section (B)(2)(a) of the Exclusions in the Policy, and provides that:

> We will not pay for loss or damage caused by or resulting from any of the following:
>
> **a.  Consequential Losses.**
>
> Delay, **loss of use** or loss of market, however caused.  [Exh. 1, 71, emphasis added.]

Fountain rests losses on the alleged "loss of use":  "Because of these government orders, Plaintiffs were physically unable to utilize their business premises and thus lost the physical use thereof."  (Exh. 1, Complaint ¶ 10.)  There is no coverage for plaintiff's claims for consequential economic losses that arose from the loss of use based on this exclusion.

One recent decision from Florida analyzing COVID-19 related claims and upheld the exclusion under the Loss of Use Exclusion contained in the Policy.  (*Harvest Moon Distributors, LLC v. S.-Owners Ins. Co.*, *supra*, 2020 WL 6018918, at *6.)

This exclusion serves as an additional reason Fountain cannot state a claim for breach of contract and declaratory relief for any consequential losses.

///

1

## VI.
## CONCLUSION

2

3          The clear and obvious trend in COVID-19 related business interruption claims in California

4   and across the country is to apply the plain reading of the policy terms and find coverage only in

5   extremely narrow circumstances that are not present here.  The Court should enter judgment on

6   plaintiffs' entire Complaint without leave to amend because plaintiffs cannot allege direct physical

7   loss under California law and the Virus Exclusion and Consequential Losses, Loss of Use

8   Exclusion preclude coverage for the losses alleged by plaintiffs.  All of plaintiffs' claims must fail

9   as a matter of law.

Dated:  November 12, 2020                    HAYES SCOTT BONINO ELLINGSON
10                                            GUSLANI SIMONSON & CLAUSE, LLP

11

12                                    By:  _/S/ Tyler R. Austin_____
                                          STEPHEN M. HAYES
13                                        TYLER R. AUSTIN
                                          Attorneys for Defendant
14                                        CITIZENS INSURANCE COMPANY OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1197018