IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT W. FOUNTAIN, INC., et al., | Case No. 20-cv-05441-CRB |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |
| CITIZENS INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

Plaintiffs Robert W. Fountain, Inc. and Robert W. Fountain (collectively, "Fountain"), operators of an event planning business in San Francisco, California, brought suit against their insurer, Defendant Citizens Insurance Company of America, for breach of contract and declaratory relief. See generally Compl. (dkt. 3). Fountain claims that it is entitled to insurance coverage for business income losses flowing from the San Francisco and California statewide "shelter in place" and "stay home" orders issued in March 2020. Id. ¶¶ 7–8. Citizens now moves for judgment on the pleadings, arguing that coverage does not exist for Fountain's claims because Fountain did not suffer a direct physical loss of or damage to property, and a Virus Exclusion in the policy precludes coverage. Mot. (dkt. 13) at 1–2.[1] The Court finds this matter suitable for resolution without oral argument and therefore VACATES the hearing currently set for December 17, 2020. See Northern District of California Civil Local Rule 7-1(b).

---

[1] Citizens initially argued that a Consequential Loss Exclusion in the policy also precluded coverage, id. at 2, but it has withdrawn that argument, see Reply (dkt. 17) at 8.

## I.   BACKGROUND

Fountain alleges that the San Francisco and California statewide "shelter in place" and "stay at home" orders of March 2020 "were issued for public health reasons as a result of a pandemic of a disease called coronavirus 2019, or COVID-19." Compl. ¶ 9. It adds that "Plaintiffs did not suffer from this virus nor was there evidence that it existed or even threatened their business establishment." Id. Fountain contends that "Because of these governmental orders, Plaintiffs were physically unable to utilize their business premises and thus lost the physical use thereof." Id. ¶ 10. Fountain made a claim to Citizens for business interruption coverage under two successive and identical Citizens insurance policies: Businessowners insurance policy number OBF-9926622, with effective dates of 05/01/2019 to 05/01/2020, and 05/01/2020 to 05/01/2121. Id. ¶¶ 6, 11; Austin Decl. (dkt. 13-1) Ex. 1. Citizens denied the claim. Compl. ¶ 12.

The policies state that Citizens "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Austin Decl. Ex. 1 at 33. The policies define "Covered Causes of Loss" as "Risks of direct physical loss unless the loss is" excluded by the Policy's exclusions. Id. at 35. The two relevant provisions of the policies are (A) the Business Income provision, and (B) the Virus Exclusion provision.

### A.   Business Income Provision

The policies define the Business Income coverage as follows:

> 5.   Additional Coverages
>
> f.   Business Income
>
> When Business Income Coverage is provided under this policy:
>
> (1)   Business Income
>
> (a) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or

>damage to a described premises shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

Id. at 39.  The policies then define the Period of Restoration as follows:

>41. "Period of Restoration"
>
>a. Means the period of time that:
>
>(1) Begins:
>
>>(a) After the number of hours shown as the Business Income Waiting Period in the Declarations after the time of direct physical loss or damage for Business Income Coverage; or
>>
>>(b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
>>
>>caused by or resulting from any Covered Cause of Loss at the described premises; and
>
>(2) Ends on the earlier of:
>
>>(a) The date when the property at the described premises should be repaired, rebuilt or replaced (to a condition permitting occupancy) with reasonable speed and similar quality; or
>>
>>(b) The date when business is resumed at a new permanent location; or
>>
>>(c) Exhaustion of the number of consecutive months as shown on the Policy Declarations Page.

Id. at 86.

### B.     Virus Exclusion Provision

The policies define the Virus Exclusion as follows:

>B.     Exclusions
>
>1.     We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
>i.     Virus or Bacteria
>
>>(1) Any virus, bacterium or other microorganism that

3

>induces or is capable of inducing physical distress, illness or disease.

Id. at 69, 71.

Interpretation of these two provisions is critical to resolving Citizens' motion for judgment on the pleadings.

## II.   LEGAL STANDARD

### A.   Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted).  As with a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted).  "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved[.]'" McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) (quoting Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984)).  A court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).

### B.   Insurance Policy Interpretation

Under California law, the interpretation of an insurance policy is a question of law. See Waller v. Trucks Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995).  Grants of coverage are to be interpreted broadly, while exclusions are interpreted narrowly and against the insurer. Shade Foods, Inc. v. Innovative Product Sales, 78 Cal. App. 4th 847, 867 (2000).  "The insurer bears the burden of proving . . . the applicability of an exclusion . . . ." State Farm

4

Fire & Cas. Co. v. Martin, 872 F.2d 319, 321 (9th Cir. 1989). The court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." Waller, 11 Cal. 4th at 18 (citation omitted). The plain language of the insurance policy governs its interpretation. See Bank of the W. v. Superior Ct., 2 Cal. 4th 1254, 1264–65 (1992). A policy provision is ambiguous if it is "capable of two or more constructions, both of which are reasonable." Waller, 11 Cal. 4th at 18. If the language is ambiguous or unclear, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Bank of the W., 2 Cal. 4th at 1264–65. Courts should "not strain to create an ambiguity where none exists." Waller, 11 Cal. 4th at 18–19.

## III. DISCUSSION

There is no coverage for Fountain's losses under the policies.

### A. "Direct Physical Loss of or Damage to"

First, despite Fountain's efforts, see Compl. ¶ 10 (alleging that Fountain was "physically unable to utilize their business premises and thus lost the physical use thereof"), it has not plausibly alleged "direct physical loss of or damage to" property, as required by the policies, see Austin Decl. Ex. 1 at 33 (Citizens "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss"), 39 ("'suspension' must be caused by direct physical loss of or damage to a described premises"). Business losses resulting from the temporary inability to access an unharmed property are not "direct physical loss of or damage to" property. They are quite obviously not "damage to property" given the plain meaning of those words. But neither are they "direct physical loss of" property.

Citizens relies on MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co., 187 Cal. App. 4th 766, 779 (2010), which held that a policy that covered "accidental direct physical loss to business personal property" required that a property

5

undergo a "distinct, demonstrable, physical alteration." See Mot. at 8–9. Citizens argues that, as there has been no physical alteration to Fountain's property, there has been no direct physical loss. Id.; see also Crisco, et al. v. Foremost Ins. Co. Grand Rapids, Michigan, et al., No. 19-07320 WHA, 2020 WL 7122476, at *5 (N.D. Cal. Dec. 4, 2020) (quoting MRI Healthcare, noting that "[o]ur plaintiffs do not seek to recover . . . loss of income. . . . Rather, plaintiffs seek to recover for the loss of their insured dwellings. . . . the fire caused a 'distinct, demonstrable, physical alteration' to the insured dwellings'").

This Court is persuaded by Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am., No. 17-04908 AB (KSx), 2018 WL 3829767, at *3–4 (C.D. Cal. July 11, 2018) and Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 20-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020), which held that physical alteration to property is not necessary for a "direct physical loss of" that property. The court in Total Intermodal noted that the language in MRI Healthcare was "direct physical loss to business personal property," and not, as here, "direct physical loss of" property. 2018 WL 3767, at *4. It concluded that "the phrase 'loss of' includes the permanent dispossession of something." Id.; see also Mudpie, 2020 WL 5525171, at *4 (following Total Intermodal in COVID-19 insurance case where policy covered "direct physical loss of or damage to property.").

That is nonetheless a problem for Fountain. Fountain alleges that it was "physically unable to utilize their business premises and thus lost the physical use thereof," Compl. ¶ 10, not that it was permanently dispossessed of its property. As Judge Tigar explained in Mudpie, temporary dispossession is inadequate: "although Mudpie has been dispossessed of its storefront, it will not be a 'permanent dispossession'" because "[w]hen the Stay at Home orders are lifted, Mudpie can regain possession of its storefront. Mudpie's physical storefront has not been 'misplaced' or become 'unrecoverable,' and neither has its inventory." 2020 WL 5525171, at *4. Judge Tigar also looked to the policy's "period of restoration" language, similar to the language here, which, by referencing an end date of

6

"when the property . . . should be repaired, rebuilt or replaced with reasonable speed and similar quality," suggested "'that the damage contemplated by the Policy is physical in nature.'"  Id. (quoting Philadelphia Parking Auth. v. Fed. Ins. Co., 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005)).  Mudpie was not entitled to Business Income coverage.  Id. at *6.

Another court in this district recently reached the same conclusion.  In Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co., No. 20-03750-WHO, 2020 WL 6562332, at *1 (N.D. Cal. Nov. 9, 2020), a company with "direct loss of or damage to" language in its policy shut down its businesses due to the spread of coronavirus and government directives.  Citing Mudpie, Judge Orrick explained that the plaintiffs had "not alleged any direct physical anything that happened to or at its specific properties.  Moreover, it has not been dispossessed or deprived of any specific property; its inventory and equipment remain.  Instead, it complains of loss of use," which does not trigger coverage.  Id. at *6 (collecting cases).

This Court agrees that "loss of" contemplates that the property is unrecoverable.  Fountain has not alleged that, and therefore has not alleged a plausible basis for Business Income coverage.[2]  The Business Income provision also requires that "[t]he loss or damage

---

[2] In its opposition brief, Fountain asserts for the first time that there is coverage under the policies' Civil Authority Provision.  See Opp'n (dkt. 16) at 6.  There is not.  The Civil Authority Provision requires, among other things, that a "Covered Cause of Loss causes damage to property other than property at the described premises" and an "action by civil authority that prohibits access to the described premises due to direct physical loss or damage to property within one mile of the described premises."  Austin Decl. Ex. 1 at 42.  The Complaint here does not implicate a Covered Cause of Loss, as explained below, nor does it allege that there was damage to a property within one mile of Fountain's property.  See generally Compl.  As another court in this district recently explained, "the Civil Authority Provision does not create coverage, it 'extends' coverage when the civil authority orders are issued 'as the direct result of a Covered Cause of Loss to property in the immediate area' of the insured's property" and does not extend coverage when the Stay at Home order was "issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion."  Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc., No. 20-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020); see also Water Sports Kauai, 2020 WL 6562332, at *8 ("In the absence of any allegation that any specific neighboring property . . . had actual coronavirus exposure, this coverage has not plausibly been triggered."); Mudpie, 2020 WL 5525171, at *7 ("Because the orders were preventative – and absent allegations of damage to adjacent property – the complaint does not establish the requisite causal link between prior property damage and the government's closure order.").

must be caused by or result from a Covered Cause of Loss." Austin Decl. Ex. 1 at 39. As explained below, the cause of loss here is not covered, because it is excluded.

### B. Virus Exclusion

The second reason that Fountain's losses are not covered is that Citizens has met its burden of proving that the Virus Exclusion applies. See Martin, 872 F.2d at 321. Fountain argues that "the virus exclusion applies only to a 'loss or damage caused by or resulting from . . . any virus," and that it "does not apply where, as here, the insured's losses are not due to a virus but by a shutdown ordered by the government." Opp'n at 7. Consistent with that theory, the Complaint alleges that "[b]ecause of [the] governmental orders, Plaintiffs were physically unable to utilize their business premises." See Compl. ¶ 10.

As an initial matter, Fountain misquotes the Virus Exclusion, which applies to "loss or damage caused directly or indirectly by . . . Any virus." See Austin Decl. at 69, 71 (emphasis added); see also id. at 69 (adding that "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."). Moreover, Fountain cannot convincingly argue that its losses were caused by the March 2020 governmental orders while ignoring that those governmental orders were themselves caused by a virus. The Complaint actually acknowledges that "[t]he aforementioned orders were issued for public health reasons as a result of a pandemic of a disease"—a virus—"called coronavirus 2019, or COVID-19." See Compl. ¶ 9.

As this Court stated in Boxed Foods Co., LLC v. California Capital Ins. Co., "Plaintiffs seek business losses and extra expenses that stem from Civil Authority Orders, but California issued these orders as a direct response to COVID-19 . . . 'a cause of loss that falls squarely within the Virus Exclusion.'" No. 20-04571-CRB, 2020 WL 6271021, at *4 (N.D. Cal. Oct. 26, 2020), as amended (Oct. 27, 2020) (quoting Franklin EWC, Inc., 2020 WL 5642483, at *2). When the plaintiffs in Boxed Foods, like Fountain here, argued "that the Civil Authority Orders caused their business losses, 'not solely' COVID-19," this

Court reasoned that "not only does the Virus Exclusion apply when a virus indirectly causes or contributes to the cause of loss . . . but under California law, COVID-19 is the "efficient proximate cause" of Plaintiffs' losses." Id. (citing Garvey v. State Farm Fire & Cas. Co., 48 Cal. 3d 395 (1989)). This Court explained:

> An "efficient proximate cause" is a cause of loss that predominates and sets the other cause of loss in motion. See id. at 402–03, 257 Cal.Rptr. 292, 770 P.2d 704. When loss can be attributed to two causes—a covered and an excluded cause—coverage only exists if the efficient proximate cause of the damage is covered under the policy. See id. at 403, 257 Cal.Rptr. 292, 770 P.2d 704. The Civil Authority Orders would not exist absent the presence of COVID-19; COVID-19 is therefore the efficient proximate of Plaintiffs' losses. Thus, the Virus Exclusion precludes Plaintiffs' claim for business income losses and extra expenses under the Civil Authority provision.

Id. As in Franklin EWC, Inc., Fountain cannot plead around this reality. See 2020 WL 5642483, at *2 (rejecting plaintiffs' theory that "the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply").

The Virus Exclusion applies and therefore precludes Fountain's claim under the Business Income Provision (as well as the Civil Authority Provision).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for judgment on the pleadings. The Court does so with prejudice as it concludes that amendment would be futile. See Leadsinger, Inc. v. BMG Music Pub., 512 F. 3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

**IT IS SO ORDERED.**

Dated: December 9, 2020

CHARLES R. BREYER
United States District Judge